## RANNEY-DAVIS MERC. CO. v. MORRIS et al.

No. 13255—Opinion Filed Feb. 26, 1924.

1. **Appeal and Error—Questions of Fact—Verdict—Conclusiveness.**

The jury are the triers of the facts in all actions at law, and when their verdict is reasonably supported by the evidence, and they have been properly instructed by the court as to the law of the case and their verdict approved by the trial court, the same will not be disturbed by this court on appeal.

2. **Trial—Refusal of Instruction Invading Province of Jury.**

The question as to what constitutes a No. 2 standard tomato, and whether or not a certain shipment of tomatoes comes up to that standard, are questions of fact to be determined by the jury from the evidence offered, under proper instructions from the court, and it was not error for the court to refuse to give a requested instruction defining standard No. 2 tomatoes

3. **Evidence—Exhibiting Canned Goods to Jury.**

Where the defense relied on certain alleged defects and imperfections as to the grade, mode of canning, and the condition of the cans, containing shipment of tomatoes, the subject-matter of the controversy, it was permissible to introduce and exhibit before the jury a number of cans for the purpose of showing the character of tomatoes contained, and the nature, cause, and effect of the defects complained of.

### 4. Damages — Measure for Breach of Contract—Statute.

For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin. Section 5976, Comp. Stats. 1921 (2852, Rev. Laws 1910).

### 5. Same—Breach of Obligation to Pay Money.

The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation, with interest thereon. Section 2977, Comp. Stats. 1921 (2853, Rev. Laws 1910).

### 6. Sales — Refusal of Buyer to Accept Goods—Measure of Damages.

In an action for breach of contract against the purchaser for refusing to receive a shipment of merchandise, on arrival at his place of business, as per contract, the measure of damages is the contract price, with the legal rate of interest from due date of purchase price, less the net amount received by the seller from the resale of the merchandise, after deducting all necessary expenses incurred in the preservation and resale of same, provided the seller procures the best market price reasonably available at the time.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Garfield County: J. C. Robberts, Judge.

Action by Tom Morris, A. L. Hanby and C. T. Denny, doing business as the Berryville Canning Company, against the Ranney-Davis Mercantile Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

A. M. Dean and Winfield Scott, for plaintiff in error.

Curran & Kruse, for defendants in error.

Opinion by JONES, C. This suit was instituted by appellees in the district court of Garfield county against the appellant to recover the sum of $4,574.05 as damages for breach of a certain contract. The record discloses that appellees Morris, Hanby, and Denny, were partners doing business as the Berryville Canning Company, and that the appellant, the Ranney-Davis Mercantile Company, a corporation, doing a general wholesale mercantile business with a branch house in the city of Enid, and that on the 10th day of May, 1920, the appellees sold 3,000 cases of tomatoes to the appellants as provided in the following contract:

"Contract.

"Berryville Canning Co., Berryville, Ark., hereby sell: Ranney-Davis Mercantile Company, Arkansas City, Kans. hereby buy 3,-000 cases No. 2 Standard Tomatoes, pack of 1920, at $1.20 per dozen, FOB Factory.

"Guaranteed to conform to Food and Drug Act of June, 1906, commonly known as the National Pure Food Law.

"All swells and leaks guaranteed six months from date of invoice. Buyer to hold swells and leaks sixty days for disposition.

"Labels: Privilege buyer's labels $1.50 per M. label allowance. If buyer's labels are used, buyer to forward labels to seller's factory, charges prepaid.

"It is mutually agreed that any and all differences arising from this sale shall be settled by arbitration in the manner agreed upon by the National Canners Association and the National Wholesale Grocers Association.

"Shipment to be made during or immediately after canning season 1920.

"Terms: Cash less 1½%, Sight Draft attached to bill of lading payable on arrival and inspection of goods.

"Seller agrees to contract sufficient acreage to cover above sale, but in case of crop failure or other causes beyond seller's control seller will make prorate delivery on this contract.

"This contract null and void should the plant of either party be destroyed by fire or the elements.

"This contract is written in triplicate.

"Accepted: Berryville Canning Co.
"Per Tom Morris, Seller.
"Accepted: The Ranney-Davis Mercantile Co.
"Per E. R. Smith, Buyer.
"Dated at Berryville, Ark., May 10, 1920.
"McManus-Heryer Brokerage Co., Brokers."

The appellees packed, wrapped and shipped said tomatoes, consisting of three carloads, to the appellants, and placed same on their trackage adjacent to their place of business in the city of Enid, Okla., according to the terms of the contract. The appellant

refused to receive the shipment, and avers in its answer to plaintiffs' petition that the tomatoes were not standard No. 2 tomatoes, and that there were many cans of tomatoes in said shipment which it denominated as flippers and swells, and that the cans in which they were packed were not properly sealed, and were rusty and not such cans as were contemplated and provided for in the contract.

Plaintiffs urge in their petition that the defendant is indebted to them in the sum of $7,293.75, the purchase price of the tomatoes, and that the tomatoes at the time of the institution of the suit were not worth to exceed 65 cts. per dozen on the No. 2 tomatoes, and the defendant's failure to receive and pay for the No. 2 tomatoes resulted in damages to these plaintiffs in the sum of $3,900, and they sustained a loss on the No. 10 tomatoes in said shipment of $93.75. That by reason of defendant's failure to accept the shipment, plaintiffs were required to pay the freight, amounting to $717.02, and demurrage in the sum of $80.53, and storage in the sum of $131.59, and expense for a member of the company from Berryville, Ark., to Enid, Okla., in connection with this matter, $45; and for removing the labels of the defendants from the cans containing said tomatoes in the sum of $300, aggregating a damage to plaintiffs in the sum of $1,574.05.

The matter was tried to a jury on November 4, 1921, and resulted in a verdict in favor of the plaintiffs against the defendant for $4,303.86. Judgment was rendered by the court in conformity to same, motion for a new tried was filed and duly overruled, from which order and judgment of the court the defendant appeals.

Appellant sets forth various assignments of error wherein it assigns as error the fact that the court permitted plaintiffs in the trial of the case to demonstrate to the jury how flippers and swells were produced, and also permitted a number of cans to be opened and the jury to inspect same for the purpose of determining the grade of tomatoes. Appellant further complained of the instructions given by the court, and the court's action in refusing to give certain requested instructions, but the principal contentions made are that the tomatoes did not come up to the terms of the contract, and were not standard No. 2 tomatoes, and that it was entitled to rescind the contract on account of the large percentage of cans containing rust, swells, leaks, and flippers in said shipment of 3,000 cases.

As to the first proposition urged, to the effect that said tomatoes were not standard No. 2 tomatoes, this is purely a question of fact, and in our judgment, under the testimony disclosed by the record, there was abundant evidence to justify the jury in arriving at the conclusion that the tomatoes were standard tomatoes and such as were contemplated under the contract.

The second proposition, wherein appellant contends that it is entitled to rescind by reason of the fact that some of the cans in the shipment containing the tomatoes were what is termed in the commercial world as flippers and swells, with which contention we cannot agree, in view of the fact that the contract under which the sale was made contains the following provisions:

"That all swells and leaks guaranteed six months from date of invoice, buyer to hold swells and leaks sixty days for disposition."

And the evidence showed that the appellees herein were at all times willing to abide by this provision, and to make good all faulty cans by reason of the defects complained of, and furthermore the preponderance of the evidence as disclosed by the record is in favor of the appellees, showing that comparatively few cans were what is known as swells or flippers, and the evidence also discloses that those cans which did contain such defects were not faulty so far as the grade of tomatoes was concerned. The evidence also shows that the tomatoes which come up to the standard in every respect might be contained in cans denominated swells or flippers as was demonstrated before the jury, and well filled cans of tomatoes may be caused to bulge or swell at the ends, which produces a condition known as a swell or flipper by slight pressure being brought to bear on the side of the cans, and that the same results may be obtained in well filled cans by reason of the normal heat of summer: consequently, we find no merit in the contention of the appellant, and the proof wholly fails to support its contention. Appellant cites numeous authorities in support of its contention. Among others is that of the case of Ruhl Clothing Co. v. Singleton (Mo.) 143 S. W. 529, which is a case where the seller stuffed the order, the purchaser refused to take that which he had not ordered, but agreed to take that which he had ordered, and later on the purchaser agreed to that which he had not ordered, hence became liable for the entire shipment. Also it cites the case of Boyd v. Second Hand Supply Company (Ariz.) 123 Pac. 619, which is a case where an engine and pump were purchased. The engine was shipped without the pump, the purchaser refused to receive the engine, and the court held that he had a right to do so and that he could not be

forced to take a portion of the order without all, and the case of William Hanley Company v. Combs (Ore.) 119 Pac. 333, is where the seller contracted to deliver 600 head of cattle of a certain age and grade, 500 were delivered, but only 225 accepted by the purchaser as coming up to the agreement. The court held that before the plaintiff could recover the purchase price of the cattle he must deliver the number of the proper age and grade.

We have examined a number of other authorities, but they, like those heretofore referred to, have no application to the case before us.

The third proposition urged is that the court erred in the instructions given and in the refusing of certain instructions.

We have carefully examined the instructions requested and the instructions given, finding that the court's instructions, as given, contain a very comprehensive statement of the facts and a correct application of law to the same. The only error that we discover is in the court's instructions of the measure of damages wherein he fails to include as an element of damages the expense incurred by one of the appellees in making a trip to Enid in connection with this matter and the item of $300 expense incurred by appellees in changing the labels on the cans, containing said tomatoes, same having been labeled according to the terms of the agreement of sale in labels especially adapted for the benefit of the appellant herein. The jury, however, seems to have taken into consideration these items in arriving at their verdict, and in order to avoid the possibility of error, appellees file a remittitur in the sum of $452, which is amply sufficient to cover any technical error that may have been committed in this particular. The facts are that tomatoes had declined in price from $1.20 per dozen to about 65 cts. per dozen from the date of the execution of the contract, and the date of delivery, and while this results in an unfortunate condition so far as the appellant is concerned, it is not such a condition as men are entitled to be relieved of, and courts have no power or right to grant any relief. Finding no error in the record, we recommend that the judgment be affirmed.

By the Court: It is so ordered.